IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PAIGE R.,

                    Plaintiff,

          v.                                    Civil Action No.
                                                5:22-CV-1222 (DEP)

MARTIN J. O'MALLEY,
Commissioner of Social Security
Administration,[1]

                    Defendant.

_____

<u>APPEARANCES</u>:                          <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

LEGAL AID SOCIETY                    ELIZABETH V. LOMBARDI, ESQ.
OF MID-NEW YORK, INC.
221 South Warren Street, Suite 310
Syracuse, NY 13202

<u>FOR DEFENDANT</u>

SOCIAL SECURITY ADMIN.               VERNON NORWOOD, ESQ. and
OFFICE OF GENERAL COUNSEL            JEFFREY M. PETERS, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
_____

[1]       Plaintiff's complaint named Kilolo Kijakazi, in her official capacity as the Acting Commissioner of Social Security, as the defendant. On December 20, 2023, Martin J. O'Malley took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2]  Oral argument was heard in connection with those motions on December 20, 2023, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[2]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1)     Defendant's motion for judgment on the pleadings is GRANTED.

2)     The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:     January 2, 2024
           Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------x
PAIGE ALEXANDRIA R.,

                         Plaintiff,

vs.                                      5:22-CV-1222

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
------------------------------------------------x

                 **DECISION** - December 20, 2023
                   HONORABLE DAVID E. PEEBLES
              United States Magistrate Judge, Presiding


                 <u>APPEARANCES</u>  (by telephone)

<u>For Plaintiff</u>:

LEGAL AID SOCIETY OF MID-NEW YORK, INC.
Syracuse Office
221 South Warren Street
Syracuse, New York 13202
BY:  ELIZABETH VICTORIA LOMBARDI, ESQ.

<u>For Defendant</u>:

SOCIAL SECURITY ADMINISTRATION
6401 Security Boulevard
Baltimore, MD 21235
BY:  VERNON NORWOOD, ESQ.




                   *Eileen McDonough, RPR, CRR*
              *Official United States Court Reporter*
                       *P.O. Box 7367*
                   *Syracuse, New York 13261*
                      *(315)234-8546*

2

1          THE COURT:  The plaintiff has commenced this
2    proceeding pursuant to 42, United States Code, Sections
3    405(g) and 1383(c)(3) to challenge an adverse determination
4    by the Acting Commissioner of Social Security finding that
5    she was not disabled at the relevant times and therefore
6    ineligible for the benefits for which she applied.  The
7    background is as follows.
8          The plaintiff was born in February of 1996.  She is
9    currently 27 years of age.  She was 22 at the onset date,
10   that being the date of her application for benefits on
11   February 15, 2018.  I will note that that date is one day
12   after a prior adverse determination by the Agency.
13         Plaintiff lives now in Manlius; did live in new
14   Woodstock, New York.  She lives with a boyfriend and one
15   daughter who was two years old at the time of the hearing in
16   July of 2021.  She stands 5 foot in height and weighs
17   approximately 89 pounds.  Plaintiff has a twelfth grade
18   education.  She received an IEP, or Individualized
19   Educational Plan, diploma.  She was in special education
20   while in school.
21         Plaintiff does not drive or take public
22   transportation.  Plaintiff has worked part time with the
23   Salvation Army four hours per day, five days per week.  In
24   the past she also worked unloading freight at a Kohl's store
25   from 2015 to 2019.  She left that position due to

1   transportation issues.

2          Plaintiff mentally suffers from borderline

3   intellectual functioning, speech articulation disorder,

4   anxiety disorder, and depressive disorder.  Physically she

5   suffers from asthma, but that is not at issue in this case.

6          Plaintiff has treated with Dr. Carolyn Coveney

7   since 2005.  Dr. Coveney apparently is a pediatrician.  She

8   began treating with Dr. Christina Walton in April of 2021.

9          In terms of activities of daily living, plaintiff

10  is able to dress, bathe, groom, do laundry, clean, socialize

11  with friends.  She states that she is close with her family

12  members.  She likes photography.  She cares for her infant

13  daughter.  She cannot read well.  She does crafts.  Plaintiff

14  cannot shop, manage money, or cook, other than preparing

15  basic meals, and does not drive, as I stated previously.

16         Procedurally, the plaintiff applied for Title XVI

17  benefits and Title II benefits on August 19, 2019, alleging

18  an onset date of March 1, 2017 and alleging intellectual

19  disability.  She underwent a hearing at her request on

20  July 27, 2021 by Administrative Law Judge John Ramos.  A

21  vocational expert also testified at that hearing.  The

22  Administrative Law Judge issued a decision on August 4, 2021.

23  It was noted at the hearing, I believe, that to the extent

24  there might have been an implied application to reopen the

25  prior failed proceeding, that implied application was denied.

4

1           The Social Security Administration Appeals Council

2    denied plaintiff's application for review on October 14, 2022

3    of the ALJ's unfavorable decision.  This action was commenced

4    on November 17, 2022, and is timely.

5           In his decision, ALJ Ramos applied the five-step

6    familiar test in determining disability, first noting that

7    plaintiff was last insured on December 31, 2020.  ALJ Ramos

8    found the plaintiff had not engaged in substantial gainful

9    activity since February 15, 2018, noting that the part-time

10   work did not rise to a level of SGA.

11          At step two, he concluded that plaintiff does

12   suffer from severe impairments that impose more than minimal

13   limitations on her ability to perform basic work functions,

14   including borderline intellectual functioning, speech

15   articulation disorder, anxiety disorder, and depressive

16   disorder.

17          At step three, he concluded that plaintiff's

18   conditions do not meet or medically equal any of the listed

19   presumptively disabling conditions set forth in the

20   Commissioner's regulations, specifically considering listings

21   12.02, 12.04 and 12.06, as well as the 12 series in general,

22   and concluded that that finding is supported by the opinions

23   of state agency consultants Dr. Oliver Fassler and

24   Dr. Jennifer Ochoa.  ALJ Ramos did note that plaintiff has a

25   full scale IQ of 74.

1            After surveying the evidence of record, ALJ Ramos

2    determined that plaintiff is capable of performing a full

3    range of work at all exertional levels with the following

4    limitations.  The claimant retains the ability to understand

5    and follow simple one and two step instructions and

6    directions; perform simple one and two step tasks with

7    supervision and independently; maintain

8    attention/concentration for simple one and two step tasks;

9    and regularly attend to routine and maintain a schedule.  The

10   claimant can relate to, and interact with, co-workers and

11   supervisors to the extent necessary to carry out simple one

12   and two step tasks, but she should avoid work requiring more

13   complex interaction, negotiation, or joint efforts with

14   co-workers to achieve work goals.

15            The claimant can tolerate only occasional, brief,

16   incidental contact with the public.  She can handle usual

17   workplace changes and interactions associated with simple

18   work.  The claimant should work in a position where she is

19   not responsible for the work of, or required to supervise,

20   others.  The claimant should work in a position with little

21   change in daily work processes or routine.  She can work at a

22   consistent pace throughout the workday, but not at a

23   production rate pace in an industrial setting, where tasks

24   must be completed within very short time deadlines.  The

25   claimant should work in a position with no requirements for

more than short, simple oral interaction with others.  She is

limited to performing jobs with a Reasoning Developmental

level of 1 per the Dictionary of Occupational Titles.

Applying the RFC finding at step four, the

Administrative Law Judge found that plaintiff did not have

any past relevant work to consider and proceeded to step five

where, based on the testimony of a vocational expert, he

concluded that claimant is capable of performing available

work in the national economy and cited three positions,

including housekeeping cleaner, flower picker, and racker,

and concluded that the Commissioner had carried her burden at

step five and found that claimant was not disabled at the

relevant times and therefore not eligible for benefits.

As the parties know, the Court's function in this

case is limited to determine whether correct, legal

principles were applied and the result is supported by

substantial evidence, defined as such relevant evidence as a

reasonable mind would find sufficient to support a

conclusion.  As the Second Circuit has noted, including in

*Brault v. Social Security Administration Commissioner*, 683

F.3d 443, Second Circuit 2012, this is an exceedingly

deferential standard.  The Court noted that it is more

stringent than the clearly erroneous standard, and that means

that once an ALJ finds a fact, that fact can be rejected only

if a reasonable fact-finder would have to conclude otherwise.

1  That standard was reaffirmed more recently in *Schillo v.*
2  *Kijakazi*, 31 F.4th, 64, Second Circuit 2022.

3          In this case plaintiff raises three basic
4  contentions.  First, she complains of an error in the
5  Administrative Law Judge's evaluation of the medical opinions
6  of record, of which there are six.  Second, she argues that
7  the Commissioner did not carry her burden at step five and
8  that the jobs cited did not match the hypothetical posed,
9  which initially included a limitation of no contact with the
10  public.  And third, relatedly, she claims conflict between
11  the Dictionary of Occupational Titles and the vocational
12  expert's testimony, which was not resolved.  And lastly, she
13  claims that the evaluation of her subjective claims of
14  symptomatology was improperly conducted.

15          In terms of medical evidence in the record, this
16  case is subject to the regulations which took effect for
17  applications filed after March 27, 2017, governing the
18  evaluation of opinion evidence.  Under those regulations the
19  Commissioner does not any longer defer or give any specific
20  evidentiary weight, including controlling weight, to any
21  medical opinions, including those from treating sources.  But
22  instead, must consider whether those opinions are persuasive
23  by primarily considering whether the opinions are supported
24  by and consistent with record in the case.  20 CFR Section
25  416.920c(a).

1          An ALJ, of course, must articulate in the decision

2   how persuasive he or she finds all of the medical opinions

3   and must explain how he or she considered the primary factors

4   of supportability and consistency.  The ALJ also may consider

5   other factors, but is not required to explain consideration

6   of those factors, which include the source's relationship

7   with the claimant, the length of the treatment relationship,

8   the frequency of examinations by the source, and the purpose

9   and extent of the treatment relationship, whether the source

10  had an examining relationship with the claimant, whether the

11  source specializes in an area of care, and any other factors

12  that are relevant to the persuasiveness of that source's

13  opinion.  20 CFR Section 416.920c(c).

14          In this case the first opinion of record comes from

15  Dr. O. Fassler.  It is in the form of a state agency

16  determination dated January 28, 2020.  It appears at pages 95

17  to 105 and again 106 to 116, because there are two

18  applications, one for disability insurance benefits and one

19  for supplemental security income.

20          The mental residual functional capacity finding on

21  page 103 of Dr. Fassler is as follows.  Understanding and

22  memory:  Claimant is able to understand and remember simple

23  instructions and procedures.  Sustained concentration and

24  persistence:  The plaintiff can maintain adequate attention

25  and concentration to complete work-like procedures and can

1   sustain a routine.  Social interaction:  The claimant is able

2   to relate and respond in an appropriate manner.  In

3   adaptation:  Claimant exhibits some difficulty with

4   adaptation but is able to cope with basic changes and make

5   work-related decisions.

6          The second opinion of record is Dr. J. Ochoa.  It

7   is again a state agency administrative determination by a

8   psychologist.  It is dated July 9, 2020.  It appears at pages

9   117 and 128 and again at 129 to 140.  There is also another

10  exhibit from Dr. Ochoa at 501 to 502.  The residual

11  functional capacity finding of Dr. Ochoa is very similar to

12  that of Dr. Fassler.  It appears at page 126 of the

13  Administrative Transcript.

14         The next opinion of record is from Dr. Corey Anne

15  Grassl.  It is dated January 23, 2020.  She is a consultative

16  examiner.  She is a psychologist who examined the plaintiff.

17  Her opinion is at 475 to 482.  The medical source statement

18  finds moderate limitations in plaintiff's ability to

19  understand, remember, or apply simple directions and

20  instructions, use reason and judgment to make work-related

21  decisions.  Markedly limited in her ability to understand,

22  remember, and apply complex directions and instructions,

23  sustain concentration and perform a task at a consistent

24  pace.  And mildly limited in her ability to regulate

25  emotions, control behavior and maintain well-being.

1          There is an opinion from Dr. Christina Walton dated
2     July 15, 2021.  It appears at 778 to 782 of the
3     Administrative Transcript.  Dr. Walton has been or had been
4     at the time plaintiff's primary treating source since April
5     of 2021.  The opinion finds some marked limitations in the
6     area of understand and remember complex instructions, carry
7     out complex instructions, and make judgments on complex
8     work-related decisions, and is consistent with the residual
9     functional capacity, which does not require any of those
10    functions.

11         There is no opinion given regarding plaintiff being
12    absent or off task by Dr. Walton.  Dr. Carolyn Coveney,
13    plaintiff's long-standing pediatrician, who has treated the
14    plaintiff since 2005, issued an opinion dated February 15,
15    2021.  It appears at 690 to 695 of the Administrative
16    Transcript.  It is extremely limiting.  It finds the
17    plaintiff is unable to meet competitive standards, which is
18    defined as distracted from job activity from 16 to 25 percent
19    of the workday or workweek in the following domains:
20    Remember work-like procedures; work in coordination or
21    proximity to others without being unduly distracted; make
22    simple work-related decisions; accept instructions and
23    respond appropriately to criticism from supervisors; respond
24    appropriately to changes in a routine work setting; and deal
25    with work stress.

1          There is also another page which notes unable to

2     meet competitive standards in understand and remember

3     detailed instructions, carry out detailed instructions, set

4     realistic goals, and make plans independently of others and

5     deal with stress of semi-skilled and skilled work.  And

6     lastly, interact appropriately with the general public is a

7     check unable to meet competitive standards.  There is some

8     written explanation in Dr. Coveney's medical opinion.

9          And lastly, there is an opinion from Dr. Michael

10    Boucher, who examined the plaintiff on November 28, 2016,

11    which is prior to the onset date but, nonetheless, the

12    Administrative Law Judge found relevant.  It's based on a

13    one-time exam.  It appears at 503 to 506 of the

14    Administrative Transcript.  And among the recommendations is

15    that plaintiff should be able to benefit from job placement

16    and retention services for relatively unskilled kinds of work

17    if it does not require frequently changing task demands,

18    rapid performance, or much in the way of articulate and

19    fluent speech.  It is recommended that supportive employment

20    services be considered.  Of course, clearly there are

21    conflicting medical reports in the record in this case.

22    Resolution of such conflicts in the first instance rests with

23    the Administrative Law Judge.  *Veino v. Barnhart*, 312 F.3d

24    578, Second Circuit 2002.

25          Dr. Coveney's report was discussed by the

1  Administrative Law Judge on the bottom of page 28 and

2  page 29.  In that portion of the opinion, Administrative Law

3  Judge Ramos does recognize the long-standing treatment

4  history from Dr. Coveney.  And I do agree with plaintiff's

5  counsel that that's an important consideration.  *Sean H. v.*

6  *Commissioner of Social Security*, 2020 WL 3969879 from the

7  District of Vermont, July 14, 2020.  The regulations, the new

8  regulations, although doing away with the treating source

9  rule, do recognize the importance of an examining

10 relationship.  20 CFR Section 416.920c(c)(3)(d).

11        The Administrative Law Judge, nonetheless, found

12 that it was less persuasive than the state agency opinions

13 and cited two reasons.  One, they're not as consistent with

14 the state agency review as opinions, the primary part of the

15 consultative examiner's opinions or the frequently benign

16 objective findings cited previously.  Moreover, its repeated

17 use of the term competitive standards, rather than medical

18 language, renders a statement outside the area of

19 Dr. Coveney's expertise.  The latter stated reason, and I

20 agree with plaintiff is not valid given that the form itself

21 does define the term competitive standards or outside

22 competitive standards; however, the opinion is contrary to

23 the state agency consultants; Dr. Boucher, Dr. Walton, and in

24 many respects Dr. Grassl.

25        I have reviewed carefully Dr. Coveney's notes and I

agree with the Administrative Law Judge that they don't

support her conclusions.  There are many, many benign

treatment notes, including at 464, 487, 495, 548, 514, 537,

615, and 632, and there are many denials by plaintiff of

experiencing any depression or anxiety, 600, 607, 623 and

628.  In addition, I don't find any focus on either the

plaintiff's borderline intellectual functioning, although I

recognize there is probably no treatment for such an

impairment, or on her speech impairment.  So I believe that

he properly considered the opinion of Dr. Coveney.

I note that I agree that there is in Dr. Grassl's

opinion, which I'll get to in a moment, a marked social

limitation, but I find that that is not inconsistent with the

RFC.  *Juliana Marie M. v. Commissioner of Social Security*,

2019 WL 6829044, Northern District of New York, December 13,

2019.  In the end it's for the Administrative Law Judge to

weigh conflicting opinions.  It's not relevant how the court

would evaluate each of those opinions, so long as there is an

adequate explanation and the result is supported by

substantial evidence.  The key inquiry is am I able to say

that no reasonable fact-finder could find Dr. Coveney's

opinion less persuasive, and the answer is no.

Dr. Grassl's opinion was rejected in part, the

marked limitations.  It was discussed at page 28 of the

Administrative Law Judge's decision, and the statement of

reasons is as follows:  "The undersigned finds the opinions
of Dr. Fassler and Dr. Ochoa to be more persuasive than that
of Dr. Grassl, because they're more consistent with the
record as a whole, particularly with the psychological
analysis and testing results.  The record convincingly
demonstrates that the claimant is limited to simple one or
two step tasks."  The rejected portions of Dr. Grassl is
because, one, the claimant has been able to maintain
part-time employment for a significant point of time; and
two, she performs most activities of daily living and
provides childcare.  Multiple sources recorded that the
claimant displays normal alertness and concentration.  I find
that that's a proper explanation and is supported by
substantial evidence.

          Dr. Walton's opinion was found generally
persuasive.  The Administrative Law Judge discussed it at
page 28, did acknowledge the limited treatment period, but
found it to be consistent with most of Dr. Grassl's
assessment and found it generally persuasive, and I don't
find any error in weighing that opinion.

          Dr. Boucher's opinion was discussed at page 29 of
the Administrative Transcript.  The Administrative Law Judge
did recognize that it was an opinion that predates the period
at issue, but found it nonetheless somewhat persuasive,
noting that there was testing involved, including IQ testing,

1    and found it to be somewhat persuasive because it was based

2    upon examination of the claimant and the limitations

3    described are generally consistent with reports of

4    Dr. Fassler, Dr. Ochoa, and Dr. Walton, and the objective

5    findings of record.  I don't have any issue with the

6    assessment of Dr. Boucher.

7           Dr. Fassler and Dr. Ochoa, as I previously

8    indicated, were found to be more persuasive than Dr. Coveney.

9    And it is true, as plaintiff argues, that they are I won't

10   use the word stale but they were issued early on in January

11   of 2020 and July of 2020, respectively.  However, I didn't

12   find any evidence of deterioration of plaintiff's condition

13   that would undermine the validity of those opinions and there

14   is certainly no rule against relying on them even though

15   they're only based on a partial record.  *Camille v. Colvin*,

16   652 F.App'x 25, Second Circuit, from June 15, 2016.  And the

17   focus of that opinion and the relevance appears at footnote

18   4.

19          I do note that both of those physicians had the

20   benefit of Dr. Grassl's opinion and all of Dr. Coveney's

21   records.  And I do recognize that it's important, that

22   treating relationship in a mental health case, but the bottom

23   line is state agency non-examining consultants can supply

24   substantial evidence to support an RFC determination.

25   *Woytowicz v. Commissioner of Social Security*, 2016 WL

16

1   6427787, from the Northern District of New York, October 5,

2   2016.  So I find no error in the weighing of the various

3   opinions of record.

4          Secondly, I'll address the assessment of

5   plaintiff's subjective symptomatology.  Of course, an ALJ

6   must take into account a plaintiff's subjective complaints

7   when going through the five-step disability analysis.  When

8   examining the issue, however, the ALJ is not required to

9   blindly accept the subjective testimony of a complainant.

10  Instead, he or she must assess whether the claimant first has

11  a medically determinable impairment that could reasonably be

12  expected to produce the alleged symptoms, and if so, must

13  evaluate both the intensity and persistence of those symptoms

14  and the extent to which they would limit the claimant's

15  ability to perform work-related activities.  That analysis is

16  governed, among other things, by Social Security Ruling

17  16-3p, which requires consideration of several relevant

18  factors, including the claimant's daily activities; location,

19  duration, frequency and intensity of any symptoms; any

20  precipitating and aggravating factors; the type, dosage,

21  effectiveness, and side effects of any medications taken;

22  other treatment received and other measures taken to relieve

23  symptoms.  That's also 20 CFR Section 416.929(c)(3)(i) to

24  (vi).  And of course the Administrative Law Judge must

25  adequately set forth his or her reasoning sufficiently to

1    permit meaningful judicial review.

2           In this case the Administrative Law Judge found at

3    page 26 that the plaintiff did suffer from medically

4    determinable impairments that could reasonably be expected to

5    cause the alleged symptoms, but did not find that those

6    symptoms were entirely consistent with the record.  He then

7    went through pages 26 through 27 expressing his rationale.

8    He relied, for example, on claimant's testing, claimant's

9    history when it comes to communications.  He noted that

10   although school records indicated claimant displayed some

11   self-consciousness about her speech disorder, she was

12   successful in communicating her ideas to those around her,

13   she seemed to initiate conversations about topics of

14   interest, she was able to add to ongoing conversations.

15          The Administrative Law Judge also cited

16   non-uniformly positive objective findings, which I've gone

17   through in terms of Dr. Coveney's findings, and went through

18   the fairly extensive activities of daily living that she was

19   capable of forming notwithstanding her impairments.  I find

20   that the Commissioner's explanation of analysis of the

21   subjective symptomatology complaints of the plaintiff to be

22   adequately explained and supported by substantial evidence.

23          The third issue is the step-five finding.  The

24   Administrative Law Judge recognized at page 30 that it was

25   the Commissioner's burden at that point to prove the

18

1  availability of work capable of being performed by the

2  plaintiff.  The hypothetical posed at pages 85 and 86 to the

3  vocational expert first included a limitation of no contact

4  with the public.  However, in questioning by the

5  Administrative Law Judge and plaintiff's counsel about

6  contact, it was clarified that, at least with regard to the

7  housekeeping cleaner position, there would possibly be brief

8  incidental contact with the public, and the vocational expert

9  testified that notwithstanding that, the plaintiff could work

10  in the housekeeping cleaner position.  That, of course, is

11  the one that has the most available jobs; 220,258.  There was

12  really no discussion of flower picker and racker as to

13  whether there would be any required contact.

14         The Dictionary of Occupational Titles related to

15  the position of cleaner housekeeping is DOT 323.687-014.  In

16  it the attributes of the job include the following:  Talking,

17  not present, activity or condition does not exist; hearing,

18  not present, activity or condition does not exist;

19  undertaking instructions and helping, not significant.

20         So there doesn't appear to be any requirement at

21  least insofar as the activity is concerned of contact.  I

22  believe it was proper for the Administrative Law Judge to

23  rely on the testimony of the vocational expert that plaintiff

24  could perform that job even if there was brief incidental

25  contact, and of course subject to all of the other

19

1    limitations sets forth in the residual functional capacity

2    finding.

3            So, in conclusion, I find that the resulting

4    determination is supported by substantial evidence and

5    resulted from the application of proper legal principles.  I

6    will therefore award judgment on the pleadings to the

7    defendant and order dismissal of plaintiff's complaint.

8            I hope you both have a good holidays and a happy

9    new year.  Thank you.

10                    *           *           *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20

1

2                        C E R T I F I C A T I O N

3

4              I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

5    Realtime Court Reporter, in and for the United States

6    District Court for the Northern District of New York,

7    do hereby certify that pursuant to Section 753, Title 28,

8    United States Code, that the foregoing is a true and correct

9    transcript of the stenographically reported proceedings held

10   in the above-entitled matter and that the transcript page

11   format is in conformance with the regulations of the

12   Judicial Conference of the United States.

13

14

15

16   _____

17              EILEEN MCDONOUGH, RPR, CRR
                Federal Official Court Reporter
18

19

20

21

22

23

24

25